NO. 12-01-00160-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS




DAVID DUPUY AND

RICHARD HAMMOND,
§
 APPEAL FROM THE 241ST

APPELLANTS



V.
§
 JUDICIAL DISTRICT COURT OF


AMERICAN ECOLOGY 

ENVIRONMENTAL SERVICES 

CORPORATION, INDIVIDUALLY AND §
 SMITH COUNTY, TEXAS

D/B/A AMERICAN ECOLOGY 

CHEMICAL SERVICES AND 

U.S. ECOLOGY, INC.

APPELLEES






 

 Appellants David Dupuy and Richard Hammond ("Dupuy" and "Hammond") appeal from
a no-evidence summary judgment entered in favor of American Ecology Environmental Services
Corporation, individually and doing business as American Ecology Chemical Services, and US
Ecology, Inc. (collectively "American Ecology"). In one issue, Dupuy and Hammond contend that
the trial court erred in granting American Ecology's motion for summary judgment. We affirm.


Background


 Dupuy and Hammond sued American Ecology to recover for injuries allegedly caused by
exposure to various hazardous and toxic waste materials while they were cleaning a hazardous waste
tank located on the premises of American Ecology. At the time of their alleged exposure, Dupuy and
Hammond were employees of Bo-Mar Gun Sights, who contracted with American Ecology to
provide various services, including the cleaning of the tank in question. 

 Over two years after the suit was filed, American Ecology filed a motion for a no-evidence
summary judgment, specifically alleging that Dupuy and Hammond had produced no evidence of
causation. Dupuy and Hammond filed a response that included the affidavit of Forrest B. (Ben)
Thomas, Ph.D. ("Dr. Thomas"), a toxicologist. In his affidavit, Dr. Thomas expressed his opinion
regarding the cause of the injuries alleged by Dupuy and Hammond: 


. . .


 From the information I have been furnished and reviewed, it is my understanding that both
Mr. Dupuy and Mr. Hammond were exposed to the contents of a hazardous waste storage
tank that they were asked to empty by hand shoveling. Neither man wore adequate protective
equipment during their first day of the job; but both men were required to wear full protective
suits with air respirators to complete work on subsequent days. Shortly after completing
work on this project, Mr. Hammond developed "blisters" and a persistent skin rash on his
hand and both men developed exertional dyspnea (i.e., shortness of breath during physical
exercise). The time sequence and concurrent symptoms in both men, as well as generally
accepted published scientific literature, support my findings that these symptoms are
consistent with exposure to toxic chemicals of the type expected in tank 110 that they
emptied.

 Based on my relevant education and experience and all of the relevant facts and data I have
reviewed in connection with this case, it is my informed opinion that Mr. Hammond has
contracted chronic, recurrent dermatitis and both Mr. Hammond and Mr. Dupuy have
contracted respiratory disease, each of which was more likely than not caused as a direct
result of their exposure to chemicals while cleaning a hazardous waste tank at the hazardous
waste disposal facility near Winona, Smith County, Texas, in which they were working on
or about June 16, 1995. Further, no other plausible cause for the injuries of David Dupuy
and Richard Hammond were [sic] evident from the facts and data I have reviewed.


. . .


 American Ecology objected to Dr. Thomas's affidavit on four grounds: (1) Dr. Thomas's
testimony lacked a proper foundation; (1) (2) Dr. Thomas is not qualified to render medical opinions;
(3) the affidavit is conclusory; and (4) Dr. Thomas failed to rule out other possible causes of the
injuries alleged by Dupuy and Hammond. The trial court conducted a hearing on American
Ecology's motion and objections and allowed the parties to file supplemental briefs. After the filing
deadline for the supplemental briefs, the trial court entered two orders. The first order sustained all
of American Ecology's objections and struck the last sentence of paragraph 5 and all of paragraph
6 from Dr. Thomas's affidavit. The second order granted American Ecology's motion for summary
judgment, but did not specify the grounds on which the trial court relied. Dupuy and Hammond
timely perfected this appeal.


Standard of Review


 A party may move for a no-evidence summary judgment if, after adequate time for discovery,
there is no evidence of one or more essential elements of a claim or defense on which the adverse
party would have the burden of proof at trial. Tex. R. Civ. P 166a(i). The motion must specify the
elements for which there is no evidence. Id. The trial court must grant the motion unless the
respondent produces summary judgment evidence that raises a genuine issue of material fact. Id.

 A request for a no-evidence summary judgment is, in effect, a request for a pretrial directed
verdict. Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.- San Antonio 1998, pet. denied). 
We apply the same legal sufficiency standard in reviewing no-evidence summary judgments as we
apply in reviewing directed verdicts. See id. We review the evidence in the light most favorable to
the respondent and disregard all contrary evidence and inferences. See id. If the respondent
produces more than a scintilla of probative evidence to raise a genuine issue of material fact, a no-evidence summary judgment is improper. Id. If the evidence rises to the level that would enable
reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence
exists. Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). Less than
a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere
surmise or suspicion of a fact, and the legal effect is that there is no evidence. See Kindred v.
Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). In the case at hand, the order granting the
summary judgment did not specify the grounds on which the trial court relied. We will therefore
affirm on any meritorious theory advanced in the motion. State Farm Fire & Cas. Co. v. S.S., 858
S.W.2d 374, 380 (Tex. 1993).

 The standards for the admissibility of evidence in a summary judgment proceeding are the
same as those applicable to a regular trial. United Blood Servs. v. Longoria, 938 S.W.2d 29, 30
(Tex. 1997) (per curiam). Where, as here, we review a trial court's exclusion of evidence, we are
mindful that the admissibility of evidence is a matter committed to the trial court's discretion. 
Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998). Therefore, we must
uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. Id. However,
a trial court abuses its discretion when it acts without regard for any guiding rules or principles. Id.
(citation omitted). 

 In one issue, Dupuy and Hammond challenge the trial court's orders sustaining American
Ecology's objections to Dr. Thomas's affidavit testimony and granting the motion for summary
judgment. Because the trial court's evidentiary rulings determine what is included in the summary
judgment record, we first consider whether the trial court abused its discretion in sustaining
American Ecology's objections.


Admissibility of Dr. Thomas's Affidavit


 Although the trial court did not specify the grounds upon which it granted the summary
judgment, Dupuy and Hammond concede that the trial court, by its ruling, determined they had
furnished no evidence of causation. However, they contend that Dr. Thomas's affidavit and excerpts
from their own depositions provide sufficient evidence of causation to avoid summary judgment. 
They also argue that Dr. Thomas's affidavit testimony satisfied the requirements of Texas Rules of
Evidence 702, 703, and 705 and was therefore admissible. American Ecology, on the other hand,
maintains that the trial court properly sustained its objections to Dr. Thomas's affidavit, leaving
Dupuy and Hammond with no expert testimony relating to causation, and therefore summary
judgment was proper.

 In its first objection to Dr. Thomas's affidavit, American Ecology submitted to the trial court
that Dr. Thomas's affidavit testimony lacked a proper foundation and argued that his testimony was
not sufficiently reliable to be admissible. Rule 705(c) of the Texas Rules of Evidence precludes the
admission of an expert opinion that is not based on a reliable foundation. Tex. R. Evid 705(c). In
other words, "[i]f the expert's scientific testimony is not reliable, it is not evidence." Havner, 953
S.W.2d at 713. Once the party opposing the expert testimony objects, the proponent bears the
burden of demonstrating its admissibility. E.I. du Pont de Nemours & Co. v. Robinson, 923
S.W.2d 549, 557 (Tex. 1995). Therefore, when American Ecology lodged its objections to Dr.
Thomas's affidavit, Dupuy and Hammond had the burden to demonstrate that Dr. Thomas's affidavit
testimony is based on a scientifically reliable foundation. American Ecology argues that Dupuy and
Hammond failed to make the required showing.

 To be reliable, the scientific techniques or principles underlying an expert's opinion must be
well grounded in the methods and procedures of science. Id. (citation omitted). Therefore, to
demonstrate that an expert's scientific opinion is reliable, the proponent must show that the opinion
is derived from sound foundational data that has been analyzed according to accepted principles of
science or medicine. Havner, 953 S.W.2d at 714. An expert's bald assurance of validity is not
enough, id. at 712, and scientific evidence that is not grounded in the methods and procedures of
science is no more than subjective belief or unsupported speculation. Robinson, 923 S.W.2d at 557
(citation omitted).

 In assessing the reliability of expert testimony, the trial court must independently evaluate
the underlying data. Havner, 953 S.W.2d at 713. If the foundational data are unreliable, any opinion
drawn from that data is likewise unreliable. Id. at 714. Further, an expert's testimony may be
unreliable even when the underlying data are sound if the expert draws conclusions from that data
based on flawed methodology. Id. Therefore, the expert must explain how the opinion was derived,
and the trial court must also evaluate the expert's methodology as part of its reliability determination. 
Burrow v. Arce, 997 S.W.2d 229, 236 (Tex. 1999); Minnesota Mining & Mfg. Co. v. Atterbury,
978 S.W.2d 183, 200 (Tex. App.- Texarkana 1998, pet. denied). 

 In considering whether expert testimony is reliable, the trial court may apply a variety of
factors, (2) including the non-exhaustive list set forth in Robinson. Id. Those factors include:



 
 the extent to which the theory has been or can be tested;
 the extent to which the technique relies upon the subjective interpretation of the expert;
 whether the theory has been subjected to peer review and publication;
 the technique's potential rate of error;
 whether the underlying theory or technique has been generally accepted as valid by the relevant
scientific community; and
 



 
 the non-judicial uses that have been made of the theory or technique. 

 


Robinson, 953 S.W.2d at 557. We therefore review Dr. Thomas's affidavit in light of those factors
to determine whether the trial court abused its discretion in sustaining American Ecology's objection
to the reliability of Dr. Thomas's affidavit testimony.

 We first note that Dr. Thomas did not describe any testing he performed to validate his
conclusions concerning causation. In addition, he did not specify the data on which he relied or
explain his methodology, which makes it difficult for others to test his opinions. The fact that Dr.
Thomas's conclusions are unverified and cannot be readily validated supports the trial court's
conclusion that his affidavit testimony is unreliable. Atterbury, 978 S.W.2d at 202. 

 We further note that Dr. Thomas's opinion is entirely subjective. Instead of explaining the
process by which he formulated his conclusions, Dr. Thomas states generally that he reviewed the
available relevant medical records and work history of Dupuy and Hammond, the available facility
records produced by American Ecology in discovery, and the relevant scientific literature regarding
occupational dermatitis and pulmonary illness. Based upon that review, he concluded that Dupuy
and Hammond's symptoms are consistent with exposure to "toxic chemicals of the type expected
in tank 110 that they emptied." From that same review, he also concluded that Hammond has
contracted chronic, recurrent dermatitis and both Dupuy and Hammond have contracted respiratory
disease, "each of which was more likely than not caused as a direct result of their exposure to
chemicals" while cleaning the tank in question. However, Dr. Thomas's affidavit includes no
discussion of the objective facts on which he based his opinions.

 Although Dr. Thomas concludes that Dupuy and Hammond's alleged injuries were caused
by exposure to toxic chemicals, he does not identify any chemicals that were present in the tank at
the time of Dupuy and Hammond's alleged exposure, the general nature of those chemicals, or the
concentrations of particular chemicals that were present. Further, he does not link a particular
chemical to the symptoms allegedly experienced by Dupuy and Hammond nor does he address the
possibility of any non-work-related exposure that could explain the alleged injuries. Moreover, Dr.
Thomas's conclusion that there is "no other plausible cause" for the alleged injuries is not derived
from any testing or other means to identify and eliminate other possible causes of the alleged
injuries. Instead, he relies solely on the fact that the materials he reviewed do not suggest another
possible cause. Dr. Thomas further states that "the time sequence" supports his conclusion regarding
causation. However, he fails to specify the duration of the alleged exposure or the length of time
between the alleged exposure and the manifestation of the symptoms Dupuy and Hammond describe. 
 Although Dr. Thomas states in his affidavit that "[t]he facts and data underlying my opinions
herein are the type generally and reasonably relied on by experts in forming opinions," his assertion
is not an acceptable substitute for a specific discussion of the facts and other data that support his
conclusions. Burrow, 997 S.W.2d at 235. His omission of such a discussion provides additional
support for the trial court's conclusion that Dr. Thomas's affidavit testimony is unreliable.

 Our review also reveals that Dr. Thomas does not state any facts in his affidavit that address
whether his theory has been published or subjected to peer review. Publication and other peer review
is a significant indicator of the reliability of scientific testimony and "increases the likelihood that
substantive flaws in methodology will be detected." Havner, 953 S.W.2d at 726-27. In addition,
Dr. Thomas did not identify the potential rate of error for his opinion or the level of acceptance of
his theory or methodology by the relevant scientific community. Similarly, Dr. Thomas does not
mention any non-judicial uses that have been made of his theory. The fact that an opinion was
prepared solely for purposes of litigation does not automatically render it suspect, but it is more
likely to be biased. Robinson, 923 S.W.2d at 529. Dr. Thomas's failure to address those factors also
indicates that the trial court correctly determined that his affidavit testimony was not reliable. See
Atterbury, 978 S.W.2d at 202.

 Based upon our review of Dr. Thomas's affidavit, we conclude that Dr. Thomas has provided
nothing more than a statement that he is an experienced toxicologist who has considered the relevant
facts and concluded that Dupuy and Hammond's alleged injuries were caused by their exposure to
toxic chemicals while working on the premises of American Ecology. Cf. Burrow, 997 S.W.2d at
236. Because Dr. Thomas's affidavit contains no reasoned basis for his opinion, his affidavit
testimony does no more than suggest a possible cause of the injuries Dupuy and Hammond allege
and does not rise to the level of reliable expert opinion. We therefore hold that the trial court did not
abuse its discretion in sustaining American Ecology's objection to the reliability of Dr. Thomas's
affidavit testimony and in striking the portions of the affidavit that state his conclusions about
causation. (3) Because Dr. Thomas's affidavit testimony was inadmissible, Dupuy and Hammond
presented no evidence of causation in response to American Ecology's motion for summary
judgment, and the trial court properly granted the motion. Weiss v. Mechanical Associated Servs.,
989 S.W.1d 120, 124 (Tex. App.- San Antonio 1999, pet. denied). Therefore, the judgment of the
trial court is affirmed.


 LEONARD DAVIS 

 Chief Justice



Opinion delivered May 14, 2002.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.
























(DO NOT PUBLISH)


1. In this objection, American Ecology specifically challenged the reliability of Dr. Thomas's affidavit testimony. 
We therefore consider the trial court's ruling in sustaining the objection a determination that the testimony was
unreliable.
2. The Robinson factors apply when determining admissibility of evidence as well as when conducting a no
evidence review. Havner, 953 S.W.2d at 714.
3. Because we uphold the trial court's ruling on American Ecology's reliability objection, we do not address the
remaining evidentiary rulings.